**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIEL J. HUDYKA** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 06-2891** |
| | : | |
| **SUNOCO, INC.** | : | |

**MEMORANDUM OPINION**

**Savage, J.**                                                                                    **January 26, 2007**

In this employment discrimination case where the plaintiff Daniel Hudyka ("Hudyka") claims he was fired based on his age and race in violation of the Age Discrimination in Employment Act[1] and the Civil Rights Act of 1866,[2] the defendant Sunoco, Inc. ("Sunoco") moves to compel arbitration. Sunoco relies upon a purported arbitration requirement governing employment discrimination claims that it unilaterally imposed during Hudyka's tenure at Sunoco. Hudyka insists he is not bound by the policy because he never received notice of the arbitration provision and, consequently, never agreed to it. Thus, the issue is whether there was a valid and enforceable arbitration agreement.

Sunoco's motion will be denied because there is no enforceable agreement. Hudyka could not have agreed to arbitrate his claims because Sunoco did not communicate the arbitration terms to him. Even if Sunoco had delivered the booklet describing the process to Hudyka and he had read it, the purported arbitration agreement is unenforceable because its ambiguous and conflicting language does not definitively state that arbitration of employment claims is mandatory.

---

[1] 29 U.S.C. § 621, *et seq.*

[2] 42 U.S.C. § 1981.

**Facts**

Hudyka, with approximately twenty-five years of engineering experience, began

working for Sunoco in August of 2000 as a technical service engineer at the defendant's

Philadelphia refinery.  Until his 2003 calendar year review, all of his performance reviews

had been "positive."[3]  On August 12, 2004, Sunoco terminated his employment allegedly

due to poor performance.[4]  Hudyka was replaced by an African American man who was

twenty years younger and less experienced.[5]

Sunoco contends that Hudyka's claims must be submitted to the arbitration program

it instituted during the plaintiff's tenure.  It argues that Hudyka's claims are governed by an

agreement that provides for arbitration of all claims related to plaintiff's employment with

Sunoco.  According to Sunoco, it adopted the ERA Program, which includes mandatory

mediation and arbitration programs, and distributed the booklet describing the Program to

its employees three months before it terminated Hudyka's employment.  In support of its

position, Sunoco attaches to its motion an email from its Senior Vice President of Human

Resources and Public Affairs, dated April 29, 2004, addressed to "Sunoco Non-

represented Employees."[6]  The email, announcing that it is "From the office of Rolf Naku,"

states in pertinent part:

> [T]he Company has developed the Employee Resolution in
> Action ("ERA") Program, effective May 1, 2004. ERA provides
> a system to more effectively handle problems that arise in the

---

[3] *Compl.* ¶¶ 14-15.

[4] *Id.* ¶¶ 16-20.

[5] *Id.* ¶¶ 11, 22-23.

[6] *Sunoco's Mot. to Compel Arbitration ("Sunoco's Mot.")*, Ex. B.

workplace.

> The majority of the problems will be resolved through the first and second phases of the program, which are called the Open Door phase and the Internal Conference phase.  However, if no resolution is reached through these phases and there is a legally protected right, an **employee has the option to proceed to** phase three, mediation, and phase four, **Binding Arbitration**.

> Over the next two months, Employee Resolution in Action Overview Sessions will be conducted throughout the Company to familiarize all non-represented employees with the benefits of the Program.  We are committed to the success of this program and for that reason attendance is mandatory.  The schedule will be communicated via email and all non-represented employees are required to attend the Overview Session.

> \*                    \*                    \*

> A booklet explaining the program will be distributed to employees.  It has also been posted on the Intranet under the Policies and Procedures section of the Employee Guide.[7]

Sunoco claims that this email provided a link to the company's intranet that posted a copy of the booklet explaining the ERA Program.  However, the message does not identify such a link, nor is the link apparent on the face of the email.

Sunoco also attaches an email dated June 16, 2004, which reminded employees that the ERA Program had become effective 45 days earlier.[8]  That email stated, in pertinent part:

> ERA . . . provides a variety of **options** for resolving work-related concerns. . . . ERA addresses issues that are not legally protected, such as administration of company policy . .

---

[7] *Id.* (emphases added).

[8] *Sunoco's Mot.*, Ex. C.

3

., as well as those that are legally protected, such as discrimination and harassment. . . . If no resolution is reached through [the first two phases of the program] and there is a legally protected right, an employee **may then proceed to** phase three, Mediation, and phase four, **Binding Arbitration**.

Overview Sessions are being conducted throughout the summer and early fall for all non-represented employees. Attendance is mandatory to ensure understanding of the ERA program.

More information about ERA can be obtained on the corporate intranet.[9]

Sunoco contends that this email also provided a link to the ERA Program booklet. Like the earlier email, this one does not direct the reader to such a link.

On the second page of the 27-page long ERA Program booklet, it states in boldface text:

If an employee . . . continues his employment with Sunoco, Inc. after the effective date of the ERA Program, the employee and Sunoco agree to all provisions of the ERA Program. This includes the requirement that any legal issue not resolved through the Open Door Phase, the Internal Conference Phase or the Mediation Phase be submitted to final and binding arbitration rather than through the courts or to a jury. This agreement covers any workplace matter including claims of discrimination based on race, . . . age or disability under any federal, state, or local civil rights statute.[10]

The booklet further states: "If the issue involves a legally protected right . . . and has not been resolved through the first three phases, you or the company **can** request arbitration."[11]  Two pages later, it reads: "If you file a lawsuit, Sunoco attorneys will go

---

[9] *Id.* (emphases added).

[10] *Sunoco's Mot.*, Ex. A at 2.

[11] *Id.* at 12 (emphasis added).

before a judge, inform him or her of the Sunoco ERA Program, and ask that the case be dismissed and sent back to the ERA Program."[12]

Hudyka asserts that he never received the April 29, 2004 email or a copy of the booklet explaining the ERA Program.  He also asserts that Sunoco never requested that he attend any "overview sessions" discussing the ERA Program, that he never attended any such sessions and never signed an arbitration agreement.  Sunoco has proffered nothing to demonstrate that the plaintiff ever received and read the booklet or attended an "overview session."

### Legal Analysis

Agreements to arbitrate employment disputes, whether based on federal or state statutory claims, are enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-10.  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).  Before mandating arbitration, the court must determine whether the parties entered into a valid agreement to arbitrate.  *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003).  In doing so, it applies the relevant state law of contracts.  *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002).

To form an enforceable contract, there must be an offer, acceptance and consideration.  *Jenkins v. County of Schuykill*, 658 A.2d 380, 383 (Pa. Super. Ct. 1995).  The offer and the acceptance must include the essential terms that both parties intend to be binding.  *In re Estate of Hall*, 731 A.2d 617, 621 (Pa. Super. Ct. 1999).  The essential terms must be definite enough to provide a basis for enforcing the agreement. *Biddle v.*

---

[12] *Id.* at 14.

*Johnsonbaugh*, 664 A.2d 159, 163 (Pa. Super. Ct. 1995).  In other words, if the terms are indefinite, there is no assent and, consequently, no agreement.  The "test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced."  *Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 298-99 (3d Cir. 1986) (*citing Lombardo v. Gasparri Excavating Co.*, 123 A.2d 663, 666 (Pa. 1956)).  Summarizing, under Pennsylvania law, a valid contract requires that: 1) both parties must manifest an intention to be bound by the agreement; (2) the terms of the agreement must be sufficiently definite; and (3) there must be consideration.  *Blair*, 283 F.3d at 603.

Agreements to arbitrate in Pennsylvania are upheld only where it is clear that the parties have agreed to arbitrate their disputes - employment and otherwise - in a clear and unmistakable manner.  *Quiles v. Financial Exchange Co.*, 879 A.2d 281, 287 (Pa. Super. Ct. 2005).  Any waiver of an employee's statutory right to a judicial forum to assert employment claims must be clear and unmistakable.  *General Elec. Co. v. Deutz*, 270 F.3d 144, 154 (3d Cir. 2001) (*quoting First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  Without knowing the terms of the contract, one cannot accept them.  *Quiles*, 879 A.2d at 288.  Therefore, an employee cannot validly agree to arbitrate his claims unless he has been advised of the arbitration terms.

## Adequacy of Notice

Sunoco did not adequately communicate the essential terms of the arbitration agreement to Hudyka.  As a result, Hudyka could not have accepted the arbitration terms, nor could he have intended to be bound by them.  Thus, there is no arbitration agreement to enforce as to Hudyka.

Hudyka alleges that he received neither the April 29, 2004 email notifying employees of the ERA Program nor the ERA Program booklet.  Sunoco relies solely on its sending the April 29, 2004 email to establish notice to Hudyka of the arbitration terms.  It has offered no confirmation that the plaintiff opened the email and does not allege that it ever distributed the ERA booklet to the plaintiff.  In short, Sunoco has not attempted to rebut Hudyka's claim that he never received notice.

There was nothing in the email heading that would have compelled an employee to open it.  The email advised that it was from "Sunoco Leadership" and that the subject was "From the office of Rolf Naku."  It did not announce that the message was important and affected employees' rights.  It assumed that employees knew who Rolf Naku was, giving them a clue about the potential topic of the message.  In short, employees were given no idea why this message among the company-wide email traffic was significant.

Even assuming Hudyka received and read the April 29, 2004 email, it did not clearly advise him that arbitration was mandatory and the only avenue to resolve employment disputes.  Specifically, the message implied that arbitration was only an option.  It read:

> [T]he Company has developed the Employee Resolution in Action ("ERA") Program, effective May 1, 2004. ERA provides a system to more effectively handle problems that arise in the workplace.  The majority of the problems will be resolved through the first and second phases of the program, which are called the Open Door phase and the Internal Conference phase.  However, if no resolution is reached through these phases and there is a legally protected right, an ***employee has the option to proceed to*** phase three, mediation, and phase four, ***Binding Arbitration***.[13]

This language informs the employee only that binding arbitration is an *optional* process an

---

[13] *Sunoco's Mot.*, Ex. B (emphases added).

employee may utilize.  It does not inform the employee that arbitration is the exclusive dispute resolution process, and is mandatory and not merely optional.  Nor does it notify an employee that his continued employment constitutes acceptance of binding arbitration terms.   Thus, the email failed to notify Hudyka of the essential terms of Sunoco's mandatory arbitration provision.

Because the email failed to convey the essential arbitration terms, the only way Hudyka may have had adequate notice of the terms is if he had received and read a copy of the ERA Program booklet.  Sunoco has not shown that he received a copy of the booklet.  The April 29, 2004 email stated that a "booklet explaining the program will be distributed to employees.  It has also been posted on the Intranet under the Policies and Procedures section of the Employee Guide."  Sunoco does not claim that it ever distributed a copy of the booklet to Hudyka.  Moreover, although Sunoco argues that this email provided a link to a copy of the booklet explaining the ERA Program on the company's intranet, the email makes no mention of any such link nor is one apparent on the face of the email.  Therefore, without having read the purported arbitration agreement, Hudyka could not have accepted its terms.

The Naku email was intended also to inform employees that they would be required to attend a session explaining the Program and that they would be notified of the schedule. Sunoco has not proffered any evidence that Hudyka was scheduled for a session or had attended one.

To ensure that each employee was properly notified of the arbitration program, Sunoco could have required an acknowledgment which could have taken a number of forms.  It did not.

Case law both in and outside of the Third Circuit supports the conclusion that Hudyka did not receive adequate notice of the arbitration terms to enable him to manifest his intention to be bound by the agreement. In *Quiles*, despite the employee's having signed a form acknowledging that she had "received and read the employer's handbook, which includes the DISPUTE RESOLUTION PROGRAM and provisions relating to arbitration" and that she "understand[s] and agree[s] to be bound by the terms of the handbook," the Pennsylvania Superior Court refused to enforce the arbitration agreement because the employee had not in fact received a copy of the handbook which contained the actual arbitration provisions. *Id.*, 879 A.2d at 283-84. The Pennsylvania Superior Court held that the employee could not have accepted the arbitration terms because the acknowledgment form itself did not state that the employee would be waiving her right to resolve disputes in a judicial forum and that arbitration was the exclusive means to resolve disputes, and the employee never received the document containing the relevant arbitration provisions. *Id.* at 286-87.

In *Carfagno v. ACE, Ltd.*, Civ. No. 04-6184, 2005 WL 1523530 (D.N.J. June 28, 2005), a signed form acknowledging that the employee received the employee guide containing the arbitration terms, promised to read it and agreed to abide by its terms was deemed insufficient notice. The Introduction page stated that as a condition of employment, the employee agreed not to bring a lawsuit to resolve any employment-related claim and instead to submit all such legal disputes to a neutral arbitrator. *Id.* at *1-2. The full terms of the arbitration policy were located elsewhere in the guide. Although the employees printed out the receipt form and signed it, they claimed that they did not see or read the other information located on the Introduction page that required scrolling farther

down the page.  *Id.* at *2.  The district court held that because the form signed by the employees did not mention arbitration, they did not receive sufficient notice that they were waiving their right to sue in court.  *Id.* at *11.

Here, the facts militating against enforcement of the arbitration provision are stronger than those in *Quiles* and *Carfagno*.  In this case, Hudyka did not sign an acknowledgment of the arbitration terms.  The absence of such a receipt bolsters his denial of any notice.

In a case involving similar facts, the First Circuit refused to enforce a company's arbitration program.  It held that a company-wide email announcement regarding the implementation of a new dispute resolution policy that included a binding arbitration provision did not provide adequate notice to employees of crucial aspects of the arbitration provision which rendered the arbitration agreement unenforceable.  *Campbell v. General Dynamics Gov't Sys. Corp.*, 407 F.3d 546 (1st Cir. 2005).  The email in *Campbell* generally described a new dispute resolution program, including that the last step of the process involved "arbitration by a qualified and independent arbitrator."  *Id.* at 547-48.  The email made no mention of how the program affected an employee's right to access a judicial forum to resolve employment disputes or that the arbitration agreement became binding upon continued employment.  *Id.*  The email language gave the impression that arbitration was an option to litigation.  *Id.* at 558.  Based on these facts, the First Circuit concluded that the text of the email provided insufficient notice to the employee that he was giving up his right to sue in court, the arbitration terms were mandatory, and the employer would treat his continued employment as an acceptance of those terms.  *Id.* at 557-58.

The facts in this case are stronger in favor of Hudyka than those in *Campbell*.

Unlike this case, the email in *Campbell* referred to "enclosed materials" and contained a link to the dispute resolution brochure and the policy, which contained all of the terms of the arbitration agreement. It also clearly described the subject matter, bearing the heading "New Dispute Resolution Policy." Sunoco's email merely stated that it was "From the office of Rolf Naku." The *Campbell* employer had proof that the plaintiff had opened the company email two minutes after it was sent. Here, Sunoco has not attempted to establish that Hudyka ever read the email.

### Definiteness of the Terms

The terms of the purported arbitration agreement are ambiguous and inconsistent. They are insufficient to establish that an employee understood that arbitration was mandatory and, accordingly, that by continuing his employment with Sunoco that he was bound to submit his claims to arbitration. Therefore, even if Hudyka had been provided with a copy of the ERA Program booklet, the arbitration provision is unenforceable.

The language describing the arbitration process is permissive and not imperative, suggesting that the employee has the option of resolving claims by arbitration or by resort to the courts. The booklet provides that "if the issue involves a legally protected right . . . and has not been resolved through the first three phases, you or the company *can* request arbitration."[14] In another part, it states that "any legal issue not resolved through the Open Door Phase, the Internal Conference Phase or the Mediation Phase be submitted to final and binding arbitration rather than through the courts or to a jury."[15] Combining this conflicting language with the email that stated that the "*employee has the option to proceed*

---

[14] *Sunoco's Mot.*, Ex. A at 12 (emphasis added).

[15] *Id.* at 2.

*to* phase three, mediation, and phase four, *Binding Arbitration*" renders the requirement ambiguous.  Indeed, it informs the employee that arbitration is an option.

Sunoco argues that the ERA Program booklet explains that the employee is giving up the right to a jury trial by agreeing to arbitrate.  Neither the booklet nor the two emails expressly state that an employee is giving up his right to a jury trial.

Sunoco cites to an answer in the Frequently Asked Questions section of its booklet as notice to employees that they could no longer seek redress of employment claims in court.  The response is to the specific question whether an employee could "sue Sunoco." Instead of unequivocally answering "no," Sunoco responded that it would merely ask a judge to dismiss the case and send it back to the ERA Program.[16]   This confusion is compounded by the answer to the question asking how an employee may seek relief if he believes his "legally protected rights have been violated."  The answer gives the employee an option, stating that "we hope that you choose to participate in the ERA Program, however, you may consult an attorney."[17]

Where an arbitration provision is ambiguous, its meaning is construed against the drafter. *Borgia v. Prudential Insur. Co.*, 750 A.2d 843, 850 (Pa. 2000).  Here, an employee could read the arbitration language as offering a permissive alternative to litigation. Therefore, because the meaning of the terms in the arbitration agreement are ambiguous and contradictory, there was no agreement to arbitrate this dispute.

---

[16] *Id.* at 14, question/answer no. 3.

[17] *Id.* at 16, question/answer no. 9.

**Conclusion**

The parties did not agree, in a clear and unmistakable manner, to arbitrate their disputes.  Because Sunoco has not shown that Hudyka read the terms of the arbitration agreement, Hudyka could not have manifested his intent to be bound by the terms.  Therefore, because there was no valid agreement between Sunoco and Hudyka to arbitrate this employment dispute, the motion to compel arbitration will be denied.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIEL J. HUDYKA** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 06-2891** |
| | : | |
| **SUNOCO, INC.** | : | |

## ORDER

**AND NOW**, this 26th day of January, 2007, upon consideration of Motion of Defendant Sunoco, Inc. to Compel Arbitration (Document No. 3), the plaintiff's response and the defendant's reply to the plaintiff's response, it is **ORDERED** that the motion is **DENIED**.

        /s/ Timothy J. Savage
        TIMOTHY J. SAVAGE, J.